IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ADRIAN MARION SMITH, #331894,<br>Plaintiff,<br>vs.<br>WARDEN JOHN MCCALL; CAPTAIN MELVIN BOSEMAN; CAPTAIN TINA SYPHERTT; DENNIS PATTERSON, DIVISION OF OPERATIONS; AND MAJOR MARSH,<br>Defendants.

Civil Action No. 3:09-2786-MBS-JRM

**REPORT AND RECOMMENDATION**

Plaintiff, Adrian Marion Smith, filed this action on October 27, 2009.[1] He appears to allege claims, pursuant to 42 U.S.C. § 1983, for violations of his constitutional rights. Plaintiff also appears to allege claims under South Carolina law. At the time of the alleged incidents he was an inmate at the Lower Savannah Pre-Release Center and the Manning Correctional Institution of the South Carolina Department of Corrections ("SCDC"). He is currently an inmate at the Allendale Correctional Institution of the SCDC. On April 8, 2010, Plaintiff filed a motion for summary judgment. Defendants filed a response on April 22, 2010. On April 16, 2010, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on April 19, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

result in the dismissal of his complaint. Plaintiff filed a response on May 27, 2010, and Defendant filed a reply on June 3, 2010.

DISCUSSION

Plaintiff asserts that he was injured in an on-the-job accident. He was part of a prison labor crew that performed work for the City of Aiken, South Carolina.[2] He alleges a "laundry list" of complaints, including that Defendants violated his constitutional rights because he was transferred to another SCDC institution, his custody classification was downgraded, he was denied access to the courts, he was denied medical care, his mail was not processed correctly, he was retaliated against, he was illegally searched, and his right to privacy was violated. Plaintiff also claims that he should be given a pardon and appears to allege claims under South Carolina law including breach of contract.[3] Plaintiff argues that he is entitled to summary judgment because Defendants have

[2]To the extent that Plaintiff is alleging claims concerning this incident or that his employer did not provide him medical care, these claims are not properly before the court. Plaintiff has not named any of the persons allegedly involved as defendants in this action. It should also be noted that Plaintiff has filed an action against City of Aiken Public Works and various employees of that entity. See Civil Action Number 3:09-cv-01242-MBS.

[3]Plaintiff also appears to assert various claims against individuals who are not named as defendants in this action. He appears to allege a claim for cruel and unusual punishment because Officers Nightengale and Birene allegedly left him in shackles for eight and one-half hours. These persons, however, have not been named as defendants in this action. To the extent that he asserts that a named defendant was responsible in a supervisory capacity, his claim fails because the doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

repeatedly violated his constitutional rights. Other than copies of some of his grievances (filed with his complaint and revised complaint - see Doc. 1), he has provided no supporting materials.[4]

Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to Eleventh Amendment immunity; (2) they are entitled to qualified immunity; (3) Plaintiff fails to show that they have been deliberately indifferent to his serious medical needs; (4) Plaintiff fails to state a claim concerning his legal mail; (5) Plaintiff fails to state a claim relating to a pardon; (6) Plaintiff fails to state a claim relating to an administrative transfer; (6) Plaintiff does not have a constitutional right to grievance procedures; and (7) Plaintiff fails to allege an injury in fact.

1. Custody Placement

Plaintiff appears to allege that his constitutional rights have been violated because he was transferred to a different institution and his security classification was downgraded. Defendants contend that Plaintiff fails to state a claim concerning these issues.

Plaintiff fails to show a constitutional violation concerning his prison or custody placement. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate

---

[4]In his response to Defendants' motion for summary judgment, Plaintiff appears to request that he be issued a patent and that this court quash a detainer from the state of Georgia. These claims, which were not asserted in Plaintiff's complaint or revised complaint, are not properly before the court. Further, Plaintiff has presented nothing more than his bare assertion that he should be granted a patent and has not pointed to any authority to show that this court can provide him with the requested relief. Further, it appears that the proper defendants as to the detainer would be the State of Georgia official who maintains it against him. See Carnage v. Sanborn, 304 F.Supp. 857 (N.D.Ga. 1969)(to quash a detainer, the suit should be brought against the prison officials to remove the detainer, not against the requesting state to require the state to bring the charges to trial).

does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).[5]

---

[5]In his response, Plaintiff claims he lost his prison job as a result of his transfer/custody change. Prisoners have no entitlement to a job at a certain pay level, or even to any job. See Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978)(custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range (continued...)

2. Medical Claims

Plaintiff appears to allege that various persons were deliberately indifferent to his medical needs. Defendants contend that Plaintiff received medical attention after his alleged on-the-job injury and that they were not deliberately indifferent to any of his serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

[5](...continued)
of confinement which could be expected by most inmates).

> order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. First, he has not even named the nurse he alleges was deliberately indifferent (Nurse B. Sanders) as a defendant in this action.[6] Further, Plaintiff's medical records reveal that he was examined by SCDC medical personnel on March 24, 2009. It was noted that there were no visible abrasions, that he had a small hematoma to his right temporal area with some mild bruising, he had some popping noted from his shoulder on range of motion exercise, and that there was no bruising or swelling noted to Plaintiff's right thumb or right knee. Pain medication was prescribed and x-rays were ordered. X-rays of Plaintiff's skull, right knee, right finger, and right shoulder were taken on March 27, 2009. These x-rays were negative for any problems, other than a notation that there was evidence of an old fracture of Plaintiff's first metacarpal. See Plaintiff's Medical Records (Attachment to Defendants' Motion for Summary Judgment).

To the extent that Plaintiff alleges a claim due to a delay in treatment, he fails to show that the delay in treatment at SCDC (which was at most from the morning until the afternoon of March 24, 2009) resulted in some substantial harm or that it created a substantial risk of serious harm of which Defendants were aware. See, e.g., Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. 2008)(Eighth Amendment violation only occurs if the delay results in some substantial harm to the patient); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993)(same); Wood v.

[6]Plaintiff also appears to allege that medical personnel at Manning Correctional Institution refused to document his problems during a medical visit. He has not named the nurse who allegedly did this as a defendant to this action. Further, all of the Defendants named in this actions are/were employees at the Lower Savannah River Pre-Release Center, not at Manning.

Housewright, 900 F.2d 1332, 1335 (9th Cir.1990)(same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware].").

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

3. Retaliation

Plaintiff may be attempting to assert a claim for retaliation for filing grievances and/or lawsuits. He has, however, provided nothing to support his allegations. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition

"retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at 74.

4. Access to the Courts

Plaintiff appears to allege that he was denied access to the courts because some of his mail was not sent out, prison official read his "legal" materials, and he was not given library access over a few days when his institution was on lockdown. He also appears to allege that his constitutional right to effective assistance of counsel was denied because he was told to sign receipts for grievance responses and legal mail without being allowed to consult with an attorney. Defendants contend that Plaintiff fails to show any actual harm or prejudice from the actions alleged.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff fails to show that his access to the courts has been violated as he has not shown any actual injury such as the late filing of a court document[7] or the dismissal of an otherwise meritorious claim resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra.

Regulations affecting incoming mail are valid if they are reasonably related to a legitimate penological interest. See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987). Prison officials are given considerable deference in regulating the delicate balance between prison order and the demands of outsiders who seek to enter the prison environment. Thornburgh, supra. Prison officials may open mail from an attorney to a prisoner in the prisoner's presence in order to protect against contraband. Wolff v. McDonnell, 418 U.S. 539 (1974); see Crowe v. Leeke, 550 F.2d 184 (4th Cir. 1977). Further, no constitutional violation arises if mail which is not properly marked (that the legal sender is specifically identified and the mail is marked confidential) is opened outside the inmate's presence. United States v. Stotts, 925 F.2d 83 (4th Cir. 1991).

Although Plaintiff argues that his mail addressed to the President of the United States was "legal mail" he fails to show that it is such and he also has not shown any actual injury as to that mail. He also fails to show that he had a right to consult with an attorney prior to signing receipts for grievances and/or mail.

5. Pardon/Release from Prison

Plaintiff appears to be requesting that this court grant him a pardon. He fails to show that this court has authority to do so. Additionally, he has not shown that any right was violated based on his not having obtained a presidential pardon. The Constitution confers on the President

---

[7]Plaintiff makes a general statement about late filings, but fails to identify any specific instance where Defendants' actions caused him to miss a filing and/or that he suffered any actual injury.

"power to grant reprieves and pardons for offenses against the United States." U.S. Const. Art. II, § 2, cl. 1. No one has a right to a presidential pardon. Binion v. United States Dep't of Justice, 695 F.2d 1189, 1190 (9th Cir.1983). See 28 C.F.R. §§ 1.1 et seq. (guidelines and procedure for executive clemency); Herrera v. Collins, 506 U.S. 390 (1993) (" 'A pardon is an act of grace ....' ") (quoting United States v. Wilson, 32 U.S. (7 Pet.) 150, 160 (1833)).

To the extent that Plaintiff is requesting that this court release him from prison, he appears to be implicating the duration of his confinement and thus is subject to the exhaustion requirement of 28 U.S.C. § 2254(b). Preiser v. Rodriguez, 411 U.S. 475 (1973). If Plaintiff wishes to challenge the duration of his confinement, he must obtain habeas forms from the Clerk of Court and file a separate action.[8] Further, the Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994), determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

6. Search and Seizure/Violation of Privacy

Plaintiff appears to argue that his cell was illegally searched by Officer Nightengale, and that Officers J. Combs and M. Bennet did a shakedown of his locker. These persons are not parties to this action. Further, an inmate has no expectation of privacy in his prison cell, therefore he cannot be subjected to an "illegal" or improper search. When it considered this issue, the Supreme Court noted that, "prisons are not beyond the reach of the Constitution," but also found that prisoners

---

[8]Plaintiff should also note that a writ of habeas corpus under either 28 U.S.C. § 2241 or § 2254 can only be sought after he has exhausted all of his remedies in the courts of the State of South Carolina. See Picard v. Connor, 404 U.S. 270 (1971); Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490-491 (1973).

are accorded only those rights which are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Hudson v. Palmer, 468 U.S. 517, 523 (1984). Although the court discussed the wide variety of situations in which prisoners retain constitutional rights, it noted that inmates' rights were curtailed in many areas, including any "subjective expectation of privacy that a prisoner might have in his prison cell. . ." Id. at 526. Here, Plaintiff has not shown that any search violated his constitutional rights.

7. Verbal Abuse/Discrimination

Plaintiff appears to allege that Defendants threatened to "ship" him and discriminated against him because he is "a white man of English-Irish and Native American Descent [Cheoroke [sic] Indian to be Exact]." Revised Complaint (Doc. 1-3) at 9. He also claims that Lieutenant Mike Jones and Sergeant Holms threatened him by showing him shackles and chains.

Plaintiff has not named Jones or Holms as defendants to this action. Further, verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the

court will not look behind the determinations of prison officials on mere accusations that they are racially motivated.").

8. Grievances/SCDC Policies

To the extent that Plaintiff alleges a claim concerning the grievance system or the processing of his grievances, his claims fail. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994).

9. Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Thus, Defendants are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

10. State Law Claims

Plaintiff appears to also assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motion for summary judgment (Doc. 19) be denied. It is also recommended that Defendants' motion for summary judgment (Doc. 21) be granted.

Joseph R. McCrorey
United States Magistrate Judge

February 18, 2011
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005)(quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).